IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ROMESH KANDA,

       Plaintiff,                            No. CIV S-09-2197 MCE GGH P

    vs.

JAMES WALKER, et al.,

       Defendants.                   FINDINGS & RECOMMENDATIONS

_____/

I. Introduction

        Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is plaintiff's August 10, 2009, motion for a preliminary injunction. Plaintiff, who is Hindu, alleges that he is being denied a diet in accordance with his religious beliefs in violation of the First Amendment. He does not proceed pursuant to RLUIPA, 42 U.S.C. § 2000cc, et seq. In his motion for injunctive relief, plaintiff seeks an order directing defendants to provide him with his religious diet.

        On September 4, 2009, the court granted defendants until September 22, 2009, to file a response to plaintiff's motion for injunctive relief. Although defendants had not yet been served, the court ordered service of the September 4, 2009, order, plaintiff's complaint and motion on the Supervising Deputy Attorney General. Defendants did not respond to this order.

Accordingly, on October 23, 2009, the undersigned recommended that plaintiff's unopposed motion for injunctive relief be granted.

On November 12, 2009, defendants filed objections to the findings and recommendations. Defendant stated that no opposition was filed due to reasons related to the state budget crisis. On December 1, 2009, the court vacated the findings and recommendations and construed defendants' objections as an opposition to plaintiff's motion. Plaintiff was granted twenty-one days to file a response to defendants' opposition. Twenty-one days passed and plaintiff did not respond.

For the following reasons, the court recommends that plaintiff's motion be denied.

## II. Discussion

### A. Notice to Defendants

At the outset, the undersigned finds that defendants received notice of plaintiff's motion by way of the September 4, 2009, order, court file document # 11, and the motion itself which were served on defendant Walker and defense counsel. See Fed. R. Civ. P. 65 (court may issue preliminary injunction only on notice to the adverse party). See also Corrigan Dispatch v. Casa Guzman, 569 F.2d 300, 302 (5th Cir. 1978): "It is not grounds for reversal that the trial court's interlocutory order was issued prior to the time that appellant was made a party by substitute service of process. *Rule 65(a) does not require service of process.* The Rule does require notice to the adverse party. The sufficiency of written and actual notice is a matter for the trial court's discretion." (Emphasis added). Also Diamond Crystal Brands Inc. v. Wallace, 531 F. Supp. 2d 1366, 1370-71 (N.D. Ga. 2008).

Defendants do not dispute that they received adequate notice.

### B. Legal Standard for Injunctive Relief

"The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an

injunction is in the public interest.'" Stormans, Inc. v. Selecky, 571 F.3d 960, 978 (9th Cir. 2009), quoting Winter v. Natural Res. Def. Council, Inc., ___ U.S. ___, 129 S.Ct. 365, 375-76 (2008).

In cases brought by prisoners involving conditions of confinement, any preliminary injunction "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2).

    C.  Relief Sought

The undersigned must first clarify the precise diet plaintiff seeks. Plaintiff, who is incarcerated at California State Prison-Sacramento (CSP-Sac), alleges that he is an Orthodox Hindu. Complaint, p. 3. In the complaint, plaintiff alleges that his religion requires that he not eat any food that comes into any contact with meat. Id. Plaintiff alleges that defendants have denied his request for a diet in accordance with his religious beliefs in violation of the First Amendment.

Attached as Exhibit B to the motion for injunctive relief is a December 14, 2007, memorandum from the Jewish Chaplain, Rabbi Book, to Wm. Haythorne, Food Services Manager at CSP-Sac. In this memorandum, Rabbi Book states,

> Please be advised that the above mentioned inmate is Hindu and in need of a special diet, in keeping with his faith. This diet should be (a) non-meat products, (b) all utensils and kitchenware should be used for the preparation of this special diet only. This so as not to contaminate the food.
>
> ACCEPTABLE FOODS:
>
> * all vegetables.
> * all fruits.
> * all fish

Attached to plaintiff's motion for injunctive relief is an administrative grievance filed by plaintiff in which he requests fruit, milk and nothing cross-contaminated by beef. Motion for Injunctive Relief, p. 11of 25.

Also attached to plaintiff's motion for injunctive relief as an exhibit is a copy of a memorandum from the Rajayoga Meditation Center titled "The Doctrine of Hinduism." Motion for Injunctive Relief, p. 21 of 25. According to this memorandum, due to religious belief, Hindus consider cows to be sacred. Id. This memorandum states that beef and beef products of any kind or not allowed in the Hindu diet. Id.

The diet plaintiff seeks appears to be broader than that described in Rabbi Book's memorandum. According to plaintiff's administrative grievances and the memorandum from the Meditation Center he submitted, he cannot eat any food that contains beef or beef byproducts or that is prepared with utensils used to prepare beef.

At the present time, plaintiff has been offered a vegetarian diet that includes dairy products and eggs, and which may contain fish when it appears on the menu. Opposition, Haythorne declaration, ¶ 4. This diet does not comply with plaintiff's religious beliefs because it includes cheese, which contains rennet, a byproduct of beef. Plaintiff also argues that the peanut butter in this diet may contain a byproduct of beef. Finally, the vegetarian diet may be prepared with utensils that are used to prepare beef or food containing beef byproducts.

D. Legal Standard for First Amendment Claim

In order to establish a free exercise violation, a prisoner must show a defendant burdened the practice of his religion, by preventing him from engaging in conduct mandated by his faith, without any justification reasonably related to legitimate penological interests. See Shakur v. Schriro, 514 F.3d 878, 883-84 (9th Cir.2008), Freeman v. Arpaio, 125 F.3d 732, 736 (9th Cir.1997). To reach the level of a constitutional violation, "the interference with one's practice of religion 'must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine.' " Id. at 737 (quoting Graham v. C.I.R., 822 F.2d 844, 851 (9th Cir.1987)).

While inmates retain their First Amendment right to the free exercise of religion, a regulation impinging on an inmate's constitutional rights passes muster so long as it is

reasonably related to a legitimate penological interest. Henderson v. Terhune, 379 F.3d 709, 712 (9th Cir. 2004), citing O'Lone v. Estate of Shabazz, 482 U.S. 342, 348, 107 S. Ct. 2400 (1987) and Turner v. Safley, 482 U.S. 78, 89, 107 S. Ct. 2254 (1987).  The Turner test includes four factors to determine if a prison regulation violates a prisoner's constitutional rights:

> (1) Whether there is a " 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it";
>
> (2) Whether there are "alternative means of exercising the right that remain open to prison inmates";
>
> (3) Whether "accommodation of the asserted constitutional right" will "impact ... guards and other inmates, and on the allocation of prison resources generally"; and
>
> (4) Whether there is an "absence of ready alternatives" versus the "existence of obvious, easy alternatives."

Turner, 482 U.S. at 89-90, 107 S.Ct. 2254(quoting Block v. Rutherford, 468 U.S. 576, 586, 104 S.Ct. 3227 (1984)).

### E.  Analysis

At the outset, defendants argue that they cannot respond to plaintiff's request for injunctive relief because plaintiff seeks to change a policy of the California Department of Corrections and Rehabilitation (CDCR).  Defendants state that as facility administrators and correctional food managers/staffers and line officers, they cannot draft or change a CDCR policy. Defendants suggest that only the CDCR Director, who is not named as a defendant, could respond to plaintiff's motion.

In support of their argument that the regulations, which they are not authorized to change, do not authorize a Hindu diet, defendants cite Cal. Code Regs., tit. 15, § 3054 and 3054.3.  Defendants contend that § 3054 authorizes only two religious diet options, a vegetarian diet and a Jewish kosher diet.  Cal. Code Regs., tit. 15, § 3054.  Defendants state that the regulations do not authorize them to offer any other type of religious diet other than the two currently provided for in the regulations.

Section 3054 provides that each institution shall make reasonable efforts, as required by law, to accommodate those inmates who have been determined, pursuant to Cal. Code Regs. tit. 15, § 3054.3(b)(1), to require a religious diet. Section 3054(e) provides, "There shall be *at least* two distinct religious diet options: (1) Vegetarian.  (2) Jewish kosher." Section 3054(e)(emphasis added).

Section 3054.3 sets forth the procedures inmates must follow to request a religious diet. This section provides that inmates must complete a CDCR Form 3030 and submit it to the prison Chaplain. The Chaplain is required to interview the inmate "to explain the two religious diet options including what the meals consist of and determine the inmate's religious diet program eligibility." Section 3054.3(b)(1).

Sections 3054 does not state that prisons may offer only vegetarian and Jewish kosher as religious diets. Rather, this section states that prisons must offer *at least* these two diets. In describing the procedures for obtaining a religious diet, § 3054.3 provides that the Chaplain must explain the two religious diet options to the inmate. The court does not find that § 3054.3 precludes a prison from offering more than one religious diet. Accordingly, defendants' argument that the regulations prohibit them from offering more than the two religious diets mentioned in the regulations is without merit.

Having found that defendants are capable of responding to an order requiring them to provide plaintiff with a special diet, the undersigned turns to the merits of plaintiff's request. The undersigned first finds that by refusing to provide plaintiff with the diet mandated by his religion, defendants are preventing him from engaging in conduct mandated by his faith. Defendants do not seriously dispute this finding. Accordingly, the undersigned next considers whether defendants' failure to provide plaintiff with his religious diet is reasonably related to a legitimate penological interest.

With regard to the first <u>Turner</u> factor, in the opposition, defendants argue that requiring them to provide plaintiff with a special Hindu diet would pose significant

administrative and budgetary difficulties. Defendants state that in order to comply with requirement that plaintiff's meals be prepared with utensils that do not come into contact with any animal products, they would have to construct a new kitchen/pantry area to prevent against the risk of cross contamination.  Defendants argue that they would have to store and prepare plaintiff's food in a special manner, the costs of which would be in excess of $173,458.  See Defendants' Opposition, Haythorne declaration, ¶ 7.

Defendants also state that providing plaintiff with a special diet would require that they hire a dietician to ensure that plaintiff receive a balanced diet.  See Defendants' Opposition, Haythorne declaration, ¶6.  Defendants observe that there are no grains mentioned in the list of acceptable food and it is unclear whether a nutritional, heart healthy diet can be created from the specified acceptable foods as set forth in the memorandum.  Id.  Defendants would therefore have to incur the cost of hiring a registered dietician to develop a heart health diet for plaintiff. Id.

Defendants also argue that they are not aware of any vendors who would ensure that no cross-contamination of food would occur in the delivery of plaintiff's acceptable food items.  Id., ¶ 9.  Defendants are unaware of any vendors who would deliver only fruit, vegetables and fish on a single truck.  Id.

Defendants have provided adequate evidence that providing plaintiff with the Hindu diet would pose an administrative and financial burden.  Whether or not defendants may have exaggerated the costs of accommodating plaintiff's request, the cost of providing plaintiff with the requested diet is not insubstantial.  Accordingly, the undersigned finds that defendants have established legitimate penological reasons for their refusal to provide plaintiff with the Hindu diet.  This factor weighs in favor of defendants.

Analysis of the second Turner factor requires consideration of whether plaintiff has "'alternative means by which he can practice his religion' or is denied all means of religious expression.'" Shakur v. Schriro, 514 F.3d 878, 886 (quoting Ward, 1 F.3d at 877).  Plaintiff does

not claim that he is being denied any other means of religious expression or that he has no alternative mans by which to practice his religion. Rather, the only part of his religious practice that he is incapable of performing is his special diet. Accordingly, the second Turner factor also weighs in defendants' favor.

Analysis of the third Turner factor, the impact of accommodation, requires a more detailed discussion of defendants' evidence. The only evidence submitted by defendants in their opposition is the declaration of William Haythorne, the Correctional Food Services Manager II at California State Prison-Sacramento. As discussed above, Mr. Haythorne estimates that it would cost $173,458 to accommodate plaintiff's request. Haythorne declaration, ¶ 7. Mr. Haythorne's declaration includes an itemization of the various costs associated with accommodating the request. Id. For example, Mr. Haythorne states that the prison would be required to purchase a new steamer for $4700 and a new grill for $6300. Id.

Mr. Haythorne also states that he is "not aware" of any vendors with whom he currently contracts who could ensure that no cross-contamination of food would occur in the delivery of plaintiff's acceptable items. Id., ¶ 9.

In Shakur, supra, the plaintiff requested a Muslim religious diet. In support of the argument that accommodating the plaintiff's request would prove too costly, the defendants submitted the declaration of the Pastoral Administrator who made the conclusory assertion that providing all 850 of the Muslim inmates with the kosher meals would cost an additional $1.5 annually and that providing them with Halal meat would be in the millions of dollars annually. 514 F.3d at 887. The Ninth Circuit noted that there was no evidence that defendants had actually looked into the costs of providing kosher meat. Id. In addition, there was no evidence that defendants had investigated suppliers of Halal meat, solicited bids or price quotes, or in any way studied the effect that accommodation would have on operating expenses. Id. The Ninth Circuit found that without more detailed findings, it could not determine whether the defendants would prevail on the third Turner factor. Id.

1  As discussed above, in the instant case, defendants have provided the declaration
2  of Mr. Haythorne, the Food Services Manager which includes an itemized statement of the costs
3  of accommodating plaintiff's request.  It is adequate evidence of the costs of accommodation.
4  However, like the defendants in Shakur, it appears that Mr. Haythorne and the defendants in the
5  instant action did not actually investigate suppliers who could provide food that complied with
6  the religious dietary restrictions.
7  Despite defendants' failure to adequately investigate other vendors and their costs,
8  defendants' evidence of the costs to change prison facilities to accommodate plaintiff's request
9  demonstrates that the third Turner factor tips in their favor.
10  Regarding the fourth Turner factor, defendants observe that upon notice of
11  plaintiff's objection to the consumption of beef and eggs and his fear of the risk of cross-
12  contamination by beef products, plaintiff was offered the opportunity to serve as a kitchen worker
13  so that he could observe the preparation of his meals.  See Defendants' Opposition, Haythorne
14  declaration, ¶ 5.  Plaintiff refused this opportunity.  Id.  While this accommodation may not have
15  100% guaranteed the purity of plaintiff's food, it would have significantly decreased the risk of
16  contamination.
17  While assisting in the preparation of his food may not have entirely eliminated the
18  risk of contamination, it would have helped to prevent it.  Plaintiff's refusal to participate in this
19  reasonable alternative tips the fourth Turner factor in defendants' favor.  In addition, the fact that
20  there are no ready alternatives to providing plaintiff with a diet that is free of beef and beef
21  byproducts also tips the fourth Turner factor in defendants' favor.
22  For the reasons discussed above, the court finds that the Turner factors weigh in
23  defendants' favor.  For that reason, plaintiff is not likely to succeed on the merits.  Because
24  defendants' refusal to provide plaintiff with the requested diet is reasonable, the court does not
25  find that plaintiff will suffer irreparable harm.  The balance of equities tips in favor of
26  defendants.  For the reasons discussed above, granting plaintiff's motion is not in the public

interest. Accordingly, plaintiff's motion for injunctive relief should be denied.

IT IS HEREBY RECOMMENDED that plaintiff's August 10, 2009, motion for a preliminary injunction (no. 3) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: January 5, 2010

/s/ Gregory G. Hollows

UNITED STATES MAGISTRATE JUDGE

ka2197.pi(2)